## THE DAVIDSON. THE GASTON. THE ANNA.

(District Court, E. D. Virginia. June 29, 1917.)

COLLISION ⊜=95(4)—STEAMER AND MEETING TOW—EXCESSIVE SPEED:
A collision between a steamer passing down Elizabeth river at Norfolk in the evening at a speed of 12 miles an hour and a barge in tow of a tug passing up to the anchorage grounds on the east side of the river, both carrying proper lights, *held* due solely to the fault of the steamer in going at too high speed in a crowded harbor, and for failing to exercise proper care to observe the lights of the tug and tow, which were the privileged vessels, in time to avoid collision.

In Admiralty. Suit for collision by the owner of the barge Davidson against the steamer Gaston, with the tug Anna impleaded. Decree for libelant against the Gaston alone.

⊜=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Hughes & Vandeventer, of Norfolk, Va., for The Davidson.
Loyall, Taylor & White, of Norfolk, Va., for The Gaston.
Hughes, Little & Seawell, of Norfolk, Va., for The Anna.

WADDILL, District Judge. This litigation involves a collision which occurred on the 17th of January, 1917, about 10:30 at night, in the Elizabeth river, Norfolk, Va., slightly to the southward and eastward of the Lambert's Point piers.

The barge Davidson, loaded with lumber, was in tow of the tug Anna, coming up the river, and at a point off the upper merchandise pier of the Norfolk & Western Railway the tug made her departure for the anchorage grounds for barges of the size of the Davidson, on the flats to the eastward of the river, just above Lambert's Point, and in the vicinity of the Black Buoy. The steamer Gaston, of the Old Bay Line, was proceeding down the river en route for Baltimore, and collided with the Davidson, striking it on the starboard side, forward of amidships, causing considerable damage.

The Davidson filed its libel against the Gaston for the damage sustained, and the latter appropriately brought in the tug under the Fifty-Ninth admiralty rule. The Gaston is a freight steamer, in service between Norfolk and Baltimore, 212 feet long, 31.5 feet beam, 19 feet deep, and 600 indicated horse power; and the barge, also engaged in bay service, 197 feet long, 23 feet 10 inches beam, and 12 feet deep, on a hawser 225 feet long, in tow of the Anna, a small harbor tug, 55 feet long, 14.5 feet beam, and 6.8 feet draft.

The Anna insists that when about opposite the merchandise pier, having a disabled tug and tow of the New York, Philadelphia & Norfolk Railroad Company between her and the pier on her port, inward bound, and having shortly before passed another tug and tow of the same company to starboard, going out, she made her departure while slightly to the eastward of mid-channel, for the anchorage grounds to the eastward of the river, to anchor the Davidson; and when near the Black Buoy she observed the Gaston coming down on her starboard, then about a mile away, off the merchandise pier at Pinner's Point, to which she gave two whistles, indicating her purpose to pass to starboard; that her signals were not answered, and that, when well to the eastward of the channel, a little beyond the Black Buoy, the Gaston, then about abreast of her on her starboard, gave a signal of one whistle, quickly followed by danger signals, and crashed into the Davidson while running at a high rate of speed; that at the time the tug's running and towing lights, as well as those on the barge, were properly set and brightly burning.

The Gaston contends that, upon going down the harbor well to the eastward of the channel, she passed on her port two tugs and tows proceeding up the channel; that she observed, down the channel, two other tugs and tows in the vicinity of and off Lambert's Point; that she first observed the red light of the Anna, when about 300 yards away on her port, when she blew one whistle and ported her wheel, to indicate her purpose to go to starboard, passing port to port; that suddenly the tug shut in her red light, and showed her green, and in a few moments the

barge showed its green light, when the Gaston gave danger signals and reversed her engines, but too late to avoid the collision.

The master of the Gaston testified that she was making about 12 miles an hour, and the mate about 8 or 9 miles; that the barge was not following in the wake of the tug; that no whistle of any sort was heard from the tug, nor did the Gaston observe the towing lights of either the tug or the barge, but only the red light of the tug before it changed its course, and the green light of the tug and barge afterwards.

Upon this state of facts, the case turns upon whom the loss must fall for the damage caused by the collision. That the barge is free from fault is manifest, unless it failed to have up proper lights, running as well as towing, or failed to properly follow the tug. There is no substantial evidence to sustain the latter position, and the court, after full consideration of all the testimony, including that of quite a number of experienced and intelligent navigators, of whom four were officers from the New York, Philadelphia & Norfolk Railroad fleet of barges then near the scene of the accident, is convinced that both the tug and tow had up their regulation running and towing lights, and that they were properly set and burning brightly.

Considering the question of liability as between the tug and the Gaston, holding the tug's lights as properly set and burning, it is difficult for the Gaston to escape liability, being the vessel charged with the duty of avoiding, as well the collision as the risk thereof, with the tug incumbered with a tow. The Georgetown (D. C.) 135 Fed. 854, 858.

With the channel straight for more than a mile, and largely crowded with shipping, two tugs and tows having passed within a mile, and two others immediately beyond the scene of the collision, admittedly seen, there was no good reason why, had those in charge of the Gaston been properly observant and attending to their duties, they could not have seen this tug and tow, however it was proceeding, whether to starboard or port, in ample time to have avoided a collision; and the Gaston cannot, in any event, escape responsibility for her failure to greatly reduce her speed in navigating in this crowded channel in its then condition.

The Gaston claims that, conceding the lights to have been properly set and burning, the tug is nevertheless responsible for having suddenly changed her course to port across the bow of the Gaston, after the latter had given the proper signal of her purpose to go to starboard and pass port to port. That the tug would have made this maneuver, assuming the facts to be as contended for by the Gaston, is highly improbable; moreover, the court does not believe that the preponderance of the testimony establishes that the tug attempted the maneuver indicated, nor is it inclined to accept the view that the Gaston, in the crowded condition of the harbor, would have attempted at that time to navigate still further to the eastward of the channel.

After a full consideration of the whole testimony, the court's conclusion is that the Gaston is solely responsible for the collision, as well because of proceeding at too high a rate of speed as the failure to exercise the care required of her to see and observe the lights of the approaching tug and tow, in time to avert the collision.

A decree carrying out these views will be entered on presentation.